IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| KEVIN D. MILLER, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 7:17-cv-00161 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| BLUE RIDGE REGIONAL JAIL, *et al.*, | ) | By: Norman K. Moon |
| Defendants. | ) | United States District Judge |

Kevin D. Miller, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations to his Eighth Amendment rights while housed at the Blue Ridge Regional Jail Authority ("BRRJA").[1] In his verified amended complaint and affidavit, Miller claims that defendants BRRJA, Nurse Teresa Jones, and Major Raymond Espinoza denied him proper dental treatment after Miller chipped his two front teeth from slipping in his cell. Specifically, Miller alleges that defendants refused to send him to a private dentist outside of the jail, absent payment from his inmate account, and offered him limited dental treatment. Am. Compl., Docket No. 10; Miller Verified Statement, Docket No. 2.

Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that Miller fails to state an Eighth Amendment claim, that Nurse Jones and Major Espinoza are entitled to qualified immunity, and that the BRRJA is not an entity amenable to suit under § 1983. Docket No. 19. In support, defendants submitted the sworn affidavits of Nurse

---

[1] In his response in opposition to defendants' motion to dismiss, Miller states the complained of incidents occurred while housed at "Lynchburg Adult Detention Center (BRRJ)." Docket No. 23. The record shows, however, that the incidents occurred at the Blue Ridge Regional Jail Authority, and the court will review Miller's claims as such.

Further, since the commencement of this action, Miller was moved to the Amherst Adult Detention Center. Presently, however, he is not housed in any facility in the Virginia Department of Corrections system.

Jones, Major Espinoza, jail dentist Dr. James Peery, as well as Miller's medical and dental records. Docket No. 20. Miller responded, Docket No. 27, and this matter is ripe for disposition. Defendants presented materials outside of the pleadings for consideration, and thus I will treat defendants' motion as one for summary judgment. Fed. R. Civ. P. 12(d). For the reasons that follow, I will grant defendants' motion for summary judgment.

## I.

On January 31, 2017, Miller filed a written Inmate Request to see the dentist, stating that he chipped his two front teeth that day and was experiencing severe pain. Miller was examined by a nurse that same day, but was not treated by a dentist. On February 1, 2017, Miller submitted another written Inmate Request, repeating that he had chipped his teeth and was in severe pain. On February 10, 2017, Miller was examined by dentist Dr. Peery, who is not a named defendant, at the jail. Miller alleges he told Dr. Peery that he had slipped while in his cell and chipped his teeth on his bunk. After Dr. Peery examined him, Miller alleges that Dr. Peery recommended Miller be sent to a private dentist outside of BRRJA to have his teeth capped and have a root canal due to the severity of his chipped teeth. Am. Compl. at 3, Docket No. 10; Miller Verified Statement at 2-3, Docket No. 2.

On February 13, 2017, Miller submitted a grievance and spoke with Major Espinoza in person, repeating his request for dental treatment and articulating his continued tooth pain. Am. Compl. at 2-3, Docket No. 10. At this time, Miller alleges he remained in severe pain and was unable to eat, drink, or speak without discomfort. *Id*. Miller repeated to Major Espinoza that Dr. Peery recommended he be sent to a private dentist outside the jail, and Miller requested that the BRRJA pay for the outside treatment. Miller alleges that Espinoza ignored Miller's pain and "clearly look[ed] pass [sic] Dentist James Peery's recommendation to be sent out to have [his]

2

teeth fixed" because Miller could not pay for dental treatment outside of the prison. *Id*. Miller continued to seek dental treatment for his chipped teeth, and went to sick call on February 14, 2017. Miller was seen by Nurse Jones and explained to her that he continued to experience severe pain.[2] That same day, Miller submitted two more written Inmate Requests, stating that Nurse Jones failed to sign him up to be seen by the dentist and explaining that he needed to see the dentist to obtain an estimate of the cost of having his teeth capped. Miller Verified Statement at 2-3, Docket No. 2. Miller insisted that having his teeth capped would be the proper remedy, but Miller alleges Nurse Jones "disregarded" Dr. Peery's recommendation and refused because Miller could not pay for dental treatment outside what was offered at the jail. Am. Compl. at 3, Docket No. 10. On February 15, 2017, Miller submitted another written Inmate Request stating that he was unable to eat or drink due to the continued severe pain. That day, Miller met with Nurse Jones and requested that he receive treatment that permanently "fixed" his teeth rather than temporarily address it, which Miller alleges that Nurse Jones again "disregarded." Miller Verified Statement at 6, Docket No. 2.

In the defendants' version of events, Nurse Jones, Major Espinoza, and Dr. Peery submit sworn affidavits to contend that Miller was provided appropriate treatment for his dental injuries. Nurse Jones submits in her affidavit that January 31, 2017 was the first day Miller complained of his chipped teeth. Miller was examined by another nurse that same day, who administered Miller 400 milligrams of ibuprofen for five days to treat the pain. Jones Decl. ¶¶ 4-5, Docket No. 20-1. Nurse Jones asserts that Dr. Peery could not see Miller on that day because he contracts with BRRJA to visit the jail twice a month and was not on site on January 31, 2017.

---

[2] In his complaint, Miller cites the day that he was treated by Nurse Jones as February 15, 2017. Both parties, however, submit materials outside the pleadings stating the correct date to be February 14, 2017.

*Id*. ¶¶ 6-7. The next time Dr. Peery was scheduled to be at the jail was February 10, 2017. *Id*. ¶¶ 6- 8.

In his affidavit, Major Espinoza submits that he replied to Miller's February 1st Inmate Request the same day to instruct Miller on filing the correct dental appointment paperwork. Espinoza Decl. ¶ 2, Docket No. 20-2. Major Espinoza asserts that Miller submitted a grievance on February 6, 2017, "indicat[ing] [Miller] was made aware that the services offered by the Jail dentist only included fillings and extractions. Miller stated that was unacceptable and that he wanted his teeth 'fixed,' seeming to indicate that he wanted a cosmetic procedure to restore his teeth[.]" *Id*. ¶ 4. Major Espinoza asserts he emailed Nurse Jones on February 7th to inquire about her knowledge of Miller's chipped teeth. Nurse Jones replied that Miller was treated the same day he first complained of his chipped teeth with ibuprofen and that prison staff had sent Miller the required dental paperwork for Miller to complete in order to see Dr. Peery when he next visited the jail. *Id*. ¶ 5. Major Espinoza asserts that Miller had not filled out the paperwork by that time, so Espinoza reiterated this instruction on February 8, 2017 to assist Miller in making the dentist's appointment. *Id*. ¶ 6.

On February 10, 2017, Dr. Peery treated Miller and asserts that Miller relayed symptoms of "thermal sensitivity consistent with pulpal exposure." Peery Decl. ¶ 5, Docket No. 20-3. Dr. Peery diagnosed these symptoms to be the result of exposed dentin, and therefore would likely be alleviated with dentinal coverage. Dr. Peery asserts he only offers certain types of dental services at the jail, temporary fillings, bondings, and extractions, and he does not offer any cosmetic services. Based on his diagnosis, Dr. Peery recommended that either extraction or temporary bonding would alleviate Miller's symptoms and provide relief for his pain. *Id*. ¶¶ 5-6, 9. Miller, however, did not want his teeth extracted. Dr. Peery asserts that Miller requested Dr.

Peery write an order for Miller to see an outside dentist for alternative treatment. *Id*. ¶ 5. Despite the medical order for Miller to see a private dentist, Major Espinoza asserts that BRRJA policy requires inmates to pay up front for fees associated with visits to medical providers outside the jail. Espinoza Decl. ¶ 10, Docket No. 20-2.

On February 14, 2017, Miller complained of continued tooth pain at sick call; Nurse Jones asserts she directed another nurse to call Dr. Peery to determine proper treatment. Jones Decl. ¶ 13, Docket No. 20-2. As a result of that phone call, Nurse Jones asserts that Dr. Peery prescribed a ten-day supply of ibuprofen and stated he would examine Miller the next time he was scheduled to be at the jail. *Id*. On February 15, 2017, Miller wrote in his Inmate Request that he was unable to eat or drink due to his severe tooth pain, and Major Espinoza asserts that he responded to Miller the next day. In his response, Major Espinoza informed Miller that the jail dentist would determine what course of treatment was appropriate, and that in the interim, the Jail Medical Department ("Medical") would start Miller on a liquid diet to ensure he could eat and drink. Espinoza Decl. ¶ 15, Docket No. 20-2. Nurse Jones asserts that February 15, 2017, was the first time she was made aware that Miller had trouble eating or drinking, and she moved Miller to be housed in Medical so she could monitor Miller's liquid diet and his pain level. Jones Decl. ¶¶ 12-13, Docket No. 20-1. Nurse Jones kept Miller in Medical for ten days, from February 15, 2017 until February 24, 2017, during which Miller was administered ibuprofen each day for pain per Dr. Peery's instructions. *Id*. ¶ 12. Nurse Jones asserts that Miller "voiced no complaints of pain during his time in Medical." *Id*. ¶ 13.

On February 23, 2017,[3] Dr. Peery examined Miller for a second time at the jail, and told Miller that he could not do a root canal or cap Miller's teeth the way Miller requested. Instead, Dr. Peery insisted that bonding Miller's teeth would be the appropriate treatment. In his affidavit, Dr. Peery asserts that Nurse Jones was present for the exam and that Dr. Peery repeated his observation that Miller's uncovered dentin was the source of Miller's pain. Peery Decl. ¶ 8, Docket No. 20-3; Medical Records, Docket No. 20-3, Ex. A. Dr. Peery states he brought the requisite materials and tools to the jail that day with the intention of performing the bonding procedure, which Dr. Peery states would "almost certainly" have alleviated Miller's pain. *Id*. ¶ 9. Dr. Peery and Nurse Jones assert that Miller refused treatment and again insisted on a repair of his chipped teeth that included cosmetic services.[4]

Ultimately, the February 23, 2017 appointment did not result in Dr. Peery repairing Miller's chipped teeth. Nor did Dr. Peery order any further special diet or pain medications for Miller. Jones Decl. ¶ 15, Docket No. 20-1. Nurse Jones then released Miller from Medical as the ten-day observation period concluded on February 24, 2017, and Miller did not submit further complaints. *Id*. ¶¶ 16-17. Major Espinoza asserts that he considered this matter resolved when Miller refused treatment for the second time with Dr. Peery. Espinoza Decl. ¶ 17, Docket No. 20-2.

For his injuries, Miller seeks "the proper and necessary treat[ment] in having [his] teeth fixed bye [sic] being sent out to have them capped." Miller further seeks an unspecified amount

---

[3] In both Nurse Jones' and Major Espinoza's affidavits, the cited date of Miller's second appointment with Dr. Peery is February 24, 2017. After reviewing Miller's medical records and Dr. Peery's submitted affidavit, it appears the appointment took place on February 23, 2017, and I will refer to it as such. *See* Docket No. 20-3, Ex. A.

[4] Miller alleges that the bonding treatment Dr. Peery offered was a "temporary approach," and that this solution would last "possibly for a few months" before the severe pain would return. Compl. at 1, Docket No. 1.

6

of monetary damages as compensation for his pain and suffering. Am. Compl. at 2, Docket No. 10.

**II.**

Pursuant to Federal Rule of Civil Procedure 12(d), if matters outside the pleadings are presented to and not excluded by the court in a Rule 12(b)(6) motion to dismiss, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. Pro. 12(d); *see Wilson-Cook Medical, Inc. v. Wilson*, 942 F.2d 247, 252 (4th Cir. 1991). Before the court may properly convert a motion to dismiss to a motion for summary judgment, however, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. Pro. 12(d). Where one of the litigants proceeds *pro se*, courts have found that more explicit notice is required before a motion to dismiss can be converted into a motion for summary judgment. *See e.g., Reaves v. Roanoke Redevelopment & House. Auth.*, No. CIV A 7:08-CV-00560, 2009 WL 366045 (W.D. Va. Feb. 12, 2009). However, conversion to a motion for summary judgment, and subsequent grant of summary judgment, may not be invoked where the affidavits present conflicting versions of the facts. *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979).

In the instant case, the parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely *Roseboro* notice on September 25, 2017, stating that Miller had twenty-one days "to submit any further counter-affidavits or other relevant evidence contradicting, explaining or avoiding Defendant's evidence." *Roseboro* Notice at 1, Docket No. 21. *See* Fed. R. Civ. P. 12(d); *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). Defendants Major Espinoza and Nurse Jones have each submitted affidavits and

7

records in support of their motion to dismiss, including an affidavit from jail dentist Dr. Peery. Miller filed a response, to which he attaches no new evidence but incorporates as an exhibit the same dental records submitted by defendants. After the timely issuance of the *Roseboro* notice, both parties had an opportunity to reject the conversion to a motion for summary judgment. Neither party did so. Finding the parties have been "given a reasonable opportunity to present all the material that is pertinent to the motion," the court will convert the motion to dismiss into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d).

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality…[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

### III.

As an initial matter, BRRJA is an improper defendant in this action. To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). A jail itself is not a "person" subject to suit under § 1983. *See Preval v. Reno*, No. 99-

6950, 2000 WL 20591, at *1 (4th Cir. Jan. 13, 2000) (unpublished); *McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 893-94 (E.D. Va. 1992). Inasmuch as Miller brings suit against BRRJA, I summarily dismiss all claims against this defendant.

## IV.

Miller claims that defendants were deliberately indifferent to the pain he suffered from chipping his teeth and refused him necessary dental treatment by only offering tooth extraction and temporary bonding or filling. Specifically, Miller alleges that Dr. Peery ordered Miller be treated by a dentist outside the jail and that Major Espinoza and Nurse Jones ignored such orders by insisting that Miller pay for any treatment beyond the options offered by the jail. Defendants contend that Miller received prompt and appropriate care for his dental injury.

### A.

In order to state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege facts sufficient to demonstrate that jail officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A prison official is "deliberately indifferent" only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A]n inadvertent failure to provide adequate medical care" does not satisfy the standard; nor does a mere negligence in diagnosis or treatment. *Estelle*, 429 U.S. at 105-06; *see Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Likewise, disagreements between an

inmate and medical personnel over course of treatment do not state a cognizable deliberate indifference claim. *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990).

It is recognized that dental care is "one of the most important medical needs of inmates." *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980); *see also Mallette v. Dunning*, 896 F.2d 546 (Table) (4th Cir. 1990) ("Deliberate indifference to dental needs has been the basis of successful statements of claims of eighth amendment violations."). Courts are governed by the principle, however, that the objective is to "provide the minimum level of [dental] care required by the Constitution." *McCauley v. Johnson*, No. Civ. A. 7:07CV00244, 2007 WL 2713067, at *4 (W.D.Va. Sept. 17, 2007) (quoting *Ruiz v. Estelle*, 679 F.2d 1115, 1150 (5th Cir.), amended in part, vacated in part, 688 F.2d 266 (5th Cir. 1982). "[T]he essential test is one of medical necessity and not one simply of desirability." *Id*. (quoting *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981) (citations omitted)). The mere fact that an inmate may believe his condition required different treatment does not establish a constitutional violation. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975) (questions of medical judgment are not subject to judicial review).

## B.

According to the record, Miller did not complain of any dental problems until January 31, 2017, the date he alleges he chipped his teeth. The dental records corroborate that Miller experienced pain, tactile sensitivity, and the inability to eat or drink from the onset of his tooth injury. Despite these symptoms, Miller repeatedly declined Dr. Peery's offer to address his tooth pain from February 10 through February 24, because it was limited to bonding or extraction, and did not include cosmetic dental treatment.

Even assuming that Miller suffered a serious medical need, the gravamen of Miller's claims regarding his dental care is that he disagrees with Dr. Peery, Nurse Jones, and Major

10

Espinoza's decisions regarding the proper course of treatment for his chipped teeth. Miller claims a right to treatment, capped teeth, which Dr. Peery deemed to be purely cosmetic and not medically necessary. While deliberate indifference may be manifested by prison medical professionals in their response to the prisoner's needs, "mere disagreement with medical personnel with respect to a course of treatment is insufficient to demonstrate deliberate indifference." *Thornhill v. Aylor*, 2016 WL 8737358, at *37 (W.D. Va. 2016) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)). Dr. Peery advised Miller that, as a jail dentist, he was limited in what dental procedures he could offer Miller and that those procedures would nonetheless resolve Miller's symptoms of pain and difficulty eating and drinking. Thereafter, Miller continued to refuse the treatment offered by the jail, and Miller's chipped teeth were not fixed. Miller's allegation that he needed his teeth capped, or some other treatment besides what was offered by Dr. Peery to resolve his pain, amounts to a disagreement with medical personnel concerning what treatment he should have received, which does not serve as a predicate to liability under § 1983. *See Farmer*, 511 U.S. at 844.

Importantly, Nurse Jones and Major Espinoza denied Miller's request for cosmetic dental care based on Dr. Peery's finding that tooth extraction or bonding was sufficient to treat Miller's pain. Miller's disagreement with Dr. Peery's course of treatment for his chipped teeth does not establish that Nurse Jones acted with deliberate indifference to his dental needs by following Dr. Peery's medical orders. Contrary to Miller's allegations, Nurse Jones promptly treated Miller with ibuprofen on January 31, 2017, directed another nurse to ask Dr. Peery to advise of proper treatment when Miller went to sick call on February 14, 2017, prescribed Miller another course of ibuprofen, and moved Miller to be housed in Medical on February 15, 2017 to start Miller on a special diet and monitor his pain levels as soon as she found out Miller had difficulty eating or

11

drinking. With respect to Major Espinoza, he likewise did not act with deliberate indifference when he followed Dr. Peery's proposed course of treatment. *See Miltier*, 896 F.2d at 854 (4th Cir. 1990) (requiring that to establish a denial of medical care against non-medical personnel, an inmate must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct). Non-medical jail personnel, such as Major Espinoza, are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the inmate's diagnosis and course of treatment. *Id*. Not only was Major Espinoza entitled to rely on Dr. Peery's medical judgment, but Major Espinoza provided prompt assistance in responding to Miller's Inmate Requests to help him obtain a dental appointment. Accordingly, Miller cannot establish that Nurse Jones or Major Espinoza were deliberately indifferent towards Miller's dental treatment, and summary judgment must be granted in their favor.

## V.

For the foregoing reasons, I grant defendants' motion for summary judgment. Having answered the denial of medical care question in the negative, I need not address defendants' qualified immunity argument.[5]

---

[5] Following defendants filing their motion to dismiss, Miller moved to compel discovery of specific recorded phone conversations the jail submitted of Miller and his fiancé. Docket No. 24. Espinoza submits in his affidavit that some time prior to meeting with Miller, Espinoza listened to phone conversations between Miller and Miller's fiancé, in which Miller said he chipped his teeth when he slipped and hit the floor while doing pushups. Espinoza Decl. ¶ 9, Docket No. 20-1. Espinoza states that he perceived the tone and laughter in the phone conversations to indicate that Miller was not in pain, and submits audio evidence of the conversations to corroborate his perception. *Id*. *See* Audio Recording, Docket No. 22, Exs. 5, 6. Because Miller's claims fail on establishing that defendants were deliberately indifferent, the nature of how Miller chipped his teeth is irrelevant.

12

An appropriate order will be entered this day.

Entered: July 6th, 2018

/s/ Norman K. Moon<br>
NORMAN K. MOON<br>
SENIOR UNITED STATES DISTRICT JUDGE

---

Miller moved to compel discovery so that he could listen to this audio recording. I deny Miller's motion to compel audio or transcripts of the phone conversations as moot.